558

**HAZELTINE CORPORATION et al. v. COE, Commissioner of Patents.**

No. 6576.

United States Court of Appeals for the District of Columbia.

Decided Dec. 7, 1936.

Rehearing Denied Dec. 16, 1936.

Clarence M. Fisher, of Washington, D. C., and Laurence B. Dodds, of New York City, for appellants.

R. F. Whitehead, Solicitor of Patent Office, and Harry S. Mackey, both of Washington, D. C., for appellee.

Before MARTIN, C. J., and ROBB, VAN ORSDEL, GRONER, and STEPHENS, JJ.

ROBB, J.

Appeal by Hazeltine Corporation and Harold A. Wheeler from a decree in the Supreme Court of the District (now District Court of the United States) dismissing their bill brought under the provisions of section 4915, R.S., as amended (35 U.S.C.A. § 63), to authorize the issuance of a patent on an application by appellant Wheeler.

The application relates to radio receivers having an automatic volume control, with a visual indicator to show when the set is tuned to true resonance with the incoming carrier current.

We agree with the tribunals of the Patent Office that it is unnecessary to describe the particular details of the structures disclosed, as the decisions of the Patent Office tribunals and the decree of the court below are based upon the ground that the system defined by the claims does not amount to patentable invention over the disclosures of certain patents. In other words, it is not contended that appellant Wheeler did not evolve the system he claims to have evolved; the contention being that the claims are unpatentable over the Friis patent (1,675,848), in view of the Perry patent (1,536,130), and that no invention would be involved in applying to the constant volume radio receiver, as shown in the Friis patent, a visual indicator to indicate resonance, as shown in the Perry patent.

Claims 68, 69, and 72 to 77, inclusive, are involved. The parties agree that claims 69 and 74 are sufficiently illustrative, and we reproduce them in the margin. [1]

1 69. In a radio receiving system responsive to signals having a large range of input intensities, an automatic control electrically linking portions of said system for maintaining the signal output intensities of said system within a small range, and means of small range for visually indicating said output intensities and thereby automatically indicating said input intensities.

74. In a high-frequency receiving system, an electron discharge device having an anode circuit, a cathode and a grid, a tuned circuit connected between the cathode and grid whereby the receiving system may be adjusted to respond to cur-

The evidence in the court below discloses that important characteristics of a radio receiver are sensitivity, "by which the receiver is capable of reaching out and pulling in the distant stations"; selectivity, whereby the receiver is capable of receiving the desired signal and rejecting undesired signals; fidelity, the ability of the receiver to reproduce accurately the tone quality of the program being received; and, last, but not least, simplicity of control—which enables the user to obtain satisfactory reception by a minimum number of adjustments.

At the time of the filing of the Wheeler application (July 7, 1927), radio receivers were quite satisfactory with respect to sensitivity and selectivity, but were not so satisfactory with respect to simplicity of control or adjustment. This was due to the fact that there were a multitude of broadcasting stations, some weak, some strong, some local, and some distant. As a result, with an adjustment of the volume control of the receiver to a point sufficiently high to receive the weakest signals within the sensitivity limit of the receiver, operation of the tuning dial over its range would result in a deafening volume from the strongest of the stations —termed in the art, "blasting." To avoid this, the user could continually adjust the volume control while tuning to a desired station. It was to overcome this annoying necessity that Wheeler devised the system set forth in the claims. The result was highly satisfactory. Although there had been a demand for that type of system, including an automatic amplification control and a tuning indicator, none was previously known to radio engineers which it was possible to adapt to radio receivers. As the witness Langley testified, "it was the first indication that I had had, as an executive engineer in the industry, that there was any method of producing the type of receiver we are here talking about, that was at all feasible commercially." Mr. Langley is a consulting engineer of wide practical experience, including service as engineer in charge of receiver design for the General Electric Company, with a staff of 30 radio engineers, and director of engineering for the Crosley Radio Company, with a staff of 60 radio engineers. He had for two years made a continuous and detailed study of the art of automatic amplification control.

Mr. Langley further testified, with respect to the system under consideration, "that it is now possible to build a receiver (and has been possible since Wheeler's teachings became available), which can be easily and quickly tuned to any desired signal without any terrific blasts of sound while the set is being tuned, and after it is tuned the amplification is automatically adjusted to the correct value, and the tuning meter indicates what the strength of the signal is relative to other signals."

The principal reference relied upon in the Patent Office and in the court below was the patent to Perry, 1,536,130, May 5, 1925. Of the references cited, this was the only patent to issue prior to Wheeler's filing date (July 7, 1927). Perry's patent relates to a two-way radio printing telegraph system, each station being both a receiving and a transmitting station. The system disclosed in this patent is only useful for a "point to point" communication system; that is, from a particular transmitter to a particular receiver. It is obvious that the problem involved in the Perry patent and the operating characteristics are quite different from those of a radio broadcast receiver. One reason that the Perry structure could not be used in a radio receiver is that it includes no means for selecting one of the plurality of broadcast signals and rejecting the undesired signals. There is disclosed no automatic amplification control in that patent. Moreover, if it be assumed that the Perry system could be used for receiving broadcast signals, his meter would be of little value because there has been no meter devised which would cover more than an ex-

rent of desired frequency, sound reproducing means, means for supplying current from the device to said sound reproducing means, means for controlling the static potential on the grid in response to the intensity of the received current thereby to produce a substantially constant volume of sound from the sound reproducing means over a range of intensities of received current, and means responsive to the magnitude of current flowing in the anode circuit for visually indicating the condition of adjustment of the tuned circuit with reference to the frequency of received current, whereby said tuned circuit may be adjusted in accordance with said last-named means independently of the audible indication supplied by the sound reproducing means.

560

ceedingly small fraction of the range of broadcast signals received.

But it is not contended that the Perry patent alone anticipates the Wheeler system. The patents to Friis, 1,675,848, July 3, 1928, Heising, 1,823,360, September 14, 1931, and Affel, 1,574,780, March 2, 1926, issued after the date of the Wheeler disclosure but on earlier filed applications (Friis filed November 29, 1924; Heising, July 6, 1925; and Affel, October 5, 1921), are also cited.

In Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 325, 70 L. Ed. 651, it was held that where a patent application fully and adequately disclosed, but did not claim, the thing patented to a later applicant alleging a later date of invention, the later applicant was not the "first inventor" within R.S. § 4920, as amended (35 U.S.C.A. § 69). That was a suit by the Davis Company, owner of the Whitford patent, for its infringement. Whitford's application was filed on March 4, 1911, and the patent was issued June 4, 1921. There was no evidence carrying Whitford's invention further back. Clifford's application was filed on January 31, 1911, before Whitford's. His patent was issued on February 6, 1912. It was not disputed that the Clifford application "gave a complete and adequate description of the thing patented to Whitford" although not claimed by Clifford. The court further observed: "The description shows that Whitford was not the first inventor. * * * The question is not whether Clifford showed himself by the description to be the first inventor. * * *

The question is whether Clifford's disclosure made it impossible for Whitford to claim the invention at a later date. * * * A description that would bar a patent if printed in a periodical or in an issued patent is equally effective in an application so far as reduction to practice goes."

It will be observed that in the Milburn Co. Case the earlier application "gave a complete and adequate description of the thing" patented to the later applicant. In the present case it is not even contended that the Friis, Heising, and Affel applications, either singly or in combination, completely and adequately disclose the claims of the Wheeler application—that is, the system embraced in the Wheeler disclosure. That being so, they do not prevent an award to Wheeler as the first inventor.

That Wheeler was the first to evolve the system set forth in the claims and thus make an important and useful advance in a highly technical art is clear. Wheeler has thus satisfied the requirements of the statute entitling him to a patent, namely, "invented or discovered" a "new and useful improvement" of an art. To deny him a patent would be to accept theory in place of fact. The Patent Office finds no fault with the phraseology of his claims nor questions their accuracy in defining his invention.

Being of the view that Wheeler's assignee, the Hazeltine Corporation, is entitled to a patent, the decree is reversed.

Reversed.